## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLORIA MOWRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 09-34J** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **JUDGE GIBSON** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. Document Nos. 10 & 12. The Court has jurisdiction in this case pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Defendant's motion for summary judgment will be denied, and the Plaintiff's motion for summary judgment will be denied insofar as it seeks an award of benefits and granted insofar as it seeks a remand for further administrative proceedings. The decision of the Commissioner of Social Security ("Commissioner") will be vacated, and the case will be remanded to him for further administrative proceedings.

### II. PROCEDURAL HISTORY

Plaintiff Gloria Mowry ("Mowry") protectively applied for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433] on March 19, 2007, alleging disability as of June 9, 2006. R. pp. 16, 113. The application was denied by the state

1

agency on May 21, 2007. R. p. 75. Mowry responded on June 6, 2007, by filing a timely request for an administrative hearing. R. p. 80. On August 7, 2008, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Richard Gartner (the "ALJ"). R. p. 25. Mowry, who was represented by counsel, appeared and testified at the hearing. R. pp. 27-54. Testimony was also taken from Robert Mowry, Mowry's husband, and Mark Heckman ("Heckman"), an impartial vocational expert. R. pp. 55-69. In a decision dated August 18, 2008, the ALJ determined that Mowry was not "disabled" within the meaning of the Act. R. pp. 13-24. The Appeals Council denied Mowry's request for review on January 7, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. p. 1. Mowry commenced this action on February 13, 2009, seeking judicial review of the Commissioner's decision. Document No. 1. Mowry and the Commissioner filed motions for summary judgment on July 15, 2009, and August 17, 2009, respectively. Document Nos. 10 & 12. These motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation

2

marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States

3

Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has

4

recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. DISCUSSION

In his decision, the ALJ determined that Mowry had not engaged in substantial gainful activity subsequent to her alleged onset date.  R. p. 18.  Mowry was found to be suffering from degenerative disc disease of the cervical and lumbar spine, which was deemed to be "severe" for purposes of 20 C.F.R. § 404.1520(a)(4)(ii).  *Id.*  The ALJ concluded that this impairment did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing").  R. pp. 18-19.  In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Mowry's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except is limited to lifting and carrying 10 pounds frequently and occasionally, is limited to sitting six hours in an eight hour day, is limited to occasional walking and standing two hours out of an eight hour day, is limited to occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling, and climbing, must be afforded the option to sit and stand during the work day, is limited to occasional bending, twisting, and turning at the neck and waist, must avoid overhead reaching with the upper extremities, must avoid exposure to hot and cold temperature extremes and extreme wetness and humidity, and is limited to occupations which do not require exposure to dangerous machinery and unprotected heights.

R. p. 19.  Mowry was born on August 12, 1961, making her 44 years old as of her alleged onset date and 47 years old as of the date of the ALJ's decision.  R. p. 22.  She was classified as a "younger person" under the Commissioner's regulations.  20 C.F.R. § 404.1563(c).  She had the equivalent of a high school education and was able to communicate in English.  R. p. 22.  Based on the

applicable residual functional capacity and vocational assessments, the ALJ concluded that Mowry could not return to her past relevant work as a janitor, housekeeper, gas station attendant or service station manager. *Id.* Nevertheless, the ALJ determined that Mowry could work as a surveillance system monitor. *Id.* Heckman's testimony established that this job existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 65-69.

In support of her motion for summary judgment, Mowry argues that the ALJ erred both in determining her residual functional capacity and in failing to evaluate her back impairments under Listing 1.04C. Document No. 11, pp. 20-22. Both of these arguments relate primarily to the ALJ's failure to consider Mowry's spinal stenosis throughout the sequential evaluation process. *Id.* As an initial matter, the Court notes that Mowry never mentioned her spinal stenosis at the hearing, and that she referred only to her degenerative disc disease, asthma and tachycardia when asked about her impairments. R. pp. 28, 31. Nevertheless, the ALJ failed to discuss Mowry's asthma and tachycardia in his opinion, thereby requiring a remand for further administrative proceedings in any event.

An administrative law judge's residual functional capacity assessment and corresponding hypothetical question to a vocational expert must incorporate all of a claimant's limitations in order for the vocational expert's testimony to constitute "substantial evidence" of the existence of jobs in the national economy that the claimant can perform. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). It is true that not every limitation *alleged* by a claimant must be conveyed to the vocational expert, and that only *credibly established* limitations need be reflected in the hypothetical question. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Nonetheless, an administrative law judge is not free to omit a limitation that is established in the record on the basis of *medically*

6

*undisputed evidence. Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

Betty Soloweigh ("Soloweigh"), a nonexamining medical consultant, indicated on May 21, 2007, that Mowry needed to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. R. p. 172. These environmental limitations were apparently identified to accommodate Mowry's asthma. At the hearing, Mowry testified that she had suffered "severe asthma complications" from the anesthesia used during a back operation. R. p. 34. The record contains evidence that Mowry was prescribed an albuterol inhaler to control her asthma symptoms. R. p. 179.

The ALJ's hypothetical question to Heckman included several limitations, some of which were ultimately not included within the ALJ's residual functional capacity assessment. R. pp. 19, 64-65. The hypothetical question did not include a limitation acknowledging Mowry's need to avoid concentrated exposure to elements that could aggravate her asthma symptoms. R. pp. 64-65. The ALJ did not address Mowry's asthma and tachycardia in his opinion. He made no findings as to whether these impairments were "severe" or "non-severe," nor did he address the question of whether these impairments resulted in functional limitations. R. pp. 18-22. This failure warrants a remand for further administrative proceedings, especially since there appears to be no medical evidence contradicting Soloweigh's consultative opinion that Mowry needed to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. R. p. 172. At the hearing, Mowry testified that her "breathing situation" was complicating her ability to undergo surgery designed to alleviate her back condition. R. p. 34. Because the record contains evidence indicating that Mowry's asthma both caused functional limitations and prevented her from obtaining the medical treatment necessary to counteract functional limitations stemming from her other impairments, it cannot be said that the evidence concerning her asthma was so lacking in probative value or

7

importance that it was permissible for the ALJ to implicitly reject it without explanation. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008). The Court cannot ascertain from the ALJ's opinion whether he considered the impact that Mowry's asthma and tachycardia had on her ability to work. For this reason, the Commissioner's administrative decision in this case cannot stand. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 506 (3d Cir. 2009).

Mowry evidently believes that she is entitled to a judicially-ordered award of benefits, without the need for further administrative proceedings. Document No. 11, p. 22. A judicially-ordered award of benefits is proper only where the administrative record of a case has been "fully developed" and "substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-222 (3d Cir. 1984). That standard is not met here. Mowry argues that her spinal stenosis is *per se* disabling under Listing 1.04C.[1] Document No. 11, pp. 19-20. In order to qualify as *per se* disabled, however, Mowry must demonstrate that her impairments either "match" or are medically "equivalent" to Listing 1.04C. *Sullivan v. Zebley*, 493 U.S. 521, 530-532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). This requires a showing that her impairments manifest *all* of the relevant medical criteria. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). The evidence contained in the record does not establish the "extreme limitation of the ability to walk" referenced in Listing 1.00B2b, which is incorporated by reference within Listing 1.04C. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b.

---

[1]

The relevant language in Listing 1.04C provides:
> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04C.

Moreover, Mowry did not mention her spinal stenosis at the hearing when the ALJ asked her to describe her potentially disabling impairments. R. pp. 28, 31.  When Mowry submitted her application for benefits, she did not list spinal stenosis as an impairment. R. p. 134. At this stage, the Court's function is not to independently make factual findings, but rather to review the administrative decision of the Commissioner. *Grant v. Shalala*, 989 F.2d 1332, 1338-1339 (3d Cir. 1993).  Since Mowry made no attempt to establish *per se* disability under Listing 1.04C during the course of the administrative proceedings, it follows *a fortiori* that she cannot make a belated attempt to do so at the present time.  If she believes herself to be *per se* disabled under Listing 1.04C, she will have to raise that issue before the Commissioner in the first instance.

Even aside from the issues surrounding Listing 1.04C, the Court cannot conclude, on the basis of the existing record, that Mowry is unable to engage in substantial gainful activity.  At the hearing, Heckman identified only the job of surveillance system monitor as being consistent with the residual functional capacity of the hypothetical individual described in the ALJ's question. R. p. 65. The testimonial record contains no evidence concerning whether one's ability to hold such a position would be compromised by the existence of environmental limitations needed to accommodate a pulmonary impairment like asthma.  Even if this position were eliminated by such limitations, the existing record would not provide a basis for awarding benefits without further proceedings, since the ALJ's hypothetical question to Heckman contained limitations that were ultimately not incorporated within the ultimate residual functional capacity finding.  At the hearing, the following colloquy between the ALJ and Heckman occurred:

Q.     All right.  Now, assume an individual with the claimant's education, training, and work experience.  Assume an individual ha [sic] the residual functional capacity to do sedentary work or less than sedentary work, lifting no more than ten pounds maximally, ten pounds

9

frequently and ten pounds occasionally. Can stand two hours of an eight-hour shift. Walk two hours of an eight-hour shift. Sit six hours of an eight-hour shift who requires the sit and stand option at will. Who should never use ladders, scaffolds, or ropes. Only occasionally use ramps or stairs, stoop, crouch, kneel, crawl, or balance. Avoid all exposures to extreme heat, extreme cold, wetness, humidity, and vibrations. Never use pneumatic, torque, or power tools. Never do over the shoulder work with either upper extremity. Who can only occasionally handle, finger, feel with both upper extremities. And never work with hazards, including dangers [sic] machinery or work at unprotected heights, and only occasionally bend, twist, or turn at the waist or neck. Now with those limitations, would such a person be able to perform any of the employment that the claimant has listed over the past 15 years, either as she actually performed them or as they are customarily performed in the national or regional economy?

A.   No, sir, due to the sedentary hypothetical, which is below the exertion of all the other jobs.

Q.   All right.

A.   Can I ask you to repeat the last restriction about the neck?

Q.   Right. I'm sorry. Only occasionally bend, twist, turn at the waist or at the neck.

A.   And occasional fingering and feeling with the hands and fingers?

Q.   Right. What I said was who can only occasionally handle, finger, feel with the right or left upper extremities. I think earlier I said with either upper extremities [sic].

A.   That knocks out every job at sedentary, but one, which is surveillance system monitor. And that has little in the way of numbers, but I can give you that.

Q.   All right. So you're referring to whether there are any jobs at all that she could perform?

A.   Yes.

Q.   All right.

A.   The inability to—only occasional [sic] finger, handle, and manipulate the upper extremities would be a very, very limiting restriction.

Q.   All right. Let me just write this down for a minute.

A.   As well as the neck bending. So many jobs are—at sedentary are assembly and bench work jobs. And not being able to bend or twist the neck is also very limiting.

10

Q.      All right.  So what you're saying is that with the hypothetical that I gave you that such an individual number one, can't do the past work, and could not do any–there are no current jobs in the national or regional economy that a person with those types of limitations could perform?

A.      Other than surveillance system monitor.

Q.      All right.

A.      And there are 24 in the local economy.

R. pp. 64-66.  The limitation to only occasional handling, fingering and feeling with both upper extremities was apparently included in the hypothetical question because of Mowry's testimony about experiencing a tingling sensation in her hands and fingers.  R. p. 42.  Mowry testified that she sometimes dropped things like cups of coffee or bowls of soup due to hand and finger impairments. R. p. 43.

In his opinion, the ALJ did not include a limitation to occasional handling, fingering and feeling within his residual functional capacity assessment.  R. p. 19.  It may be that the ALJ did not believe this limitation to have been credibly established.  *Rutherford*, 399 F.3d at 554.  Heckman described this limitation as "a very, very limiting restriction."  R. p. 65.  He presumably meant that sedentary jobs other than that of surveillance system monitor would be available to an individual with Mowry's residual functional capacity who could engage in *frequent* handling, fingering and feeling.  Because the range of sedentary work available to Mowry was potentially *broader* than that described by Heckman (i.e., a range including jobs that were not mentioned because the ALJ's hypothetical question included a limitation that was not subsequently found to be present), a judicially-ordered award of benefits would be improper even if the Court were able to conclude without further proceedings that Mowry's asthma would compromise her ability to work as a

11

surveillance system monitor.  Therefore, the proper remedy in this case is a vacation of the Commissioner's administrative decision, and a remand for further proceedings.

## V. CONCLUSION

The United States Court of Appeals for the Third Circuit has held that a remand for further administrative proceedings in required where the Commissioner's analysis is insufficiently developed to permit meaningful judicial review. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120 (3d Cir. 2000).  In his opinion, the ALJ did not discuss the effect that Mowry's asthma, tachycardia and spinal stenosis had on her ability to work.  Furthermore, he did not explain why he ultimately rejected functional limitations that had previously been included within his hypothetical question to Heckman.  Having reviewed the ALJ's opinion in light of the evidentiary record, the Court cannot determine whether the evidence concerning certain impairments (and resulting limitations) was considered and rejected, considered and discounted, or not considered at all.  *Fargnoli*, 247 F.3d at 44.  Mowry specifically discussed her asthma and tachycardia at the hearing.  R. p. 31.  Although she did not identify her spinal stenosis as an impairment, the documentary record contains evidence that she was diagnosed with this condition.  R. pp. 169, 174, 194, 210, 220, 255-256, 287.  The ALJ simply failed to account for these impairments in his analysis, making it impossible for the Court to provide the meaningful judicial review to which Mowry is entitled under the Act.[2]  Accordingly, the Commissioner's motion for summary judgment will be denied, and Mowry's motion for summary judgment will be denied with respect to the

---

[2] The ALJ may have considered Mowry's degenerative disc disease and spinal stenosis to be a single back impairment, since Mowry referred only to "degenerative disc disease" when asked about her back and neck impairments. R. p. 28. Even if that is the case, the ALJ's failure to account for Mowry's asthma and tachycardia requires a remand for further administrative proceedings.  If Mowry believes that her spinal stenosis should be considered separately from her degenerative disc disease, she is free to pursue that issue before the Commissioner on remand.

request for benefits but granted with respect to the alternative request for a remand. The decision of the Commissioner will be vacated, and the case will be remanded for further administrative proceedings. An appropriate order follows.

AND NOW, this _30th_ day of March 2010, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Document No. 10) and the Motion for Summary Judgment filed by the Defendant (Document No. 12), IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment is **DENIED** insofar as it seeks an award of benefits but **GRANTED** insofar as it seeks a vacation of the Defendant's administrative decision, and a remand for further administrative proceedings, and that the Defendant's Motion for Summary Judgment is **DENIED**. The decision of the Commissioner of Social Security is hereby **VACATED**, and the case is remanded to him for further proceedings consistent with the foregoing memorandum opinion.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:    All counsel of record

14